**RIO HONDO MEMORIAL HOSPITAL, a California corporation,**

v.

**The UNITED STATES.**

No. 75–80C.

United States Court of Claims.

Sept. 22, 1982.

---

Patric Hooper, Los Angeles, Cal., for plaintiff; Robert A. Klein, Los Angeles, Cal., attorney of record. Gail Anderson and Weissburg & Aronson, Inc., Los Angeles, Cal., of counsel.

Robert E. Richardson, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant. Patricia Delaney Yonushonis, Department of Health and Human Services, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This case, before us on cross motions for summary judgment, requires the court to determine the appropriate treatment under Medicare of sales transactions between related parties that were completed before the effective date of the Medicare Act. Specifically, plaintiff, the provider, seeks to deduct the interest expense incurred by its owner in purchasing plaintiff's assets from a related party as a reasonable cost of providing care. Secondly, plaintiff's owner seeks to increase the valuation of plaintiff's assets as a result of the sale in order to claim a stepped-up basis for depreciation.

On the effective date of the Medicare Act,[1] July 1, 1966, Rio Hondo Associates (hereinafter "Associates") owned and controlled the land, building, and equipment used in operating the Rio Hondo Memorial Hospital (hereinafter "Hospital"). The Associates purchased all the assets and stock in one transaction from the Orangewood Realty Holding Company (hereinafter "Orangewood") on April 6, 1966, in an agreement that was effective January 1, 1966. Orangewood had leased these assets to the Hospital before the sale and Associates continued to do so after the sale. Associates is a partnership of 50 individuals comprised of all 30 partners of Orangewood and an additional 20 new investors.

The Associates gave Orangewood notes for $940,000 to cover the purchase of the assets. Notes in the amount of $700,000 covered the purchase of the stock. Interest at the rate of 6 percent a year was charged on each note. As a result of the sale, the value of the assets was increased approximately $780,000. The Hospital sought reimbursement from Medicare for the interest expense and depreciation costs incurred by Associates for the years ending October 31, 1966, and October 31, 1967. The Hospi-

1. The Medicare Act of 1966, 42 U.S.C. § 1395 et seq. (1976) (amended Supp. II, 1979).

tal claimed those costs arguing, for purposes of reimbursement under the Medicare Act, that Associates and Hospital should be treated as "one entity."

The Hospital filed its Medicare reports for the years ending October 31, 1966, and October 31, 1967, with its designated fiscal intermediary, Blue Cross Association of Southern California (hereinafter "BCSC"). The Hospital claimed the interest expense and depreciation costs which arose from the sale of the assets of the hospital to Associates. BCSC denied reimbursement for those costs reasoning that the sale of stock and assets from Orangewood to Associates was between related organizations and hence not a bona fide sale for Medicare reimbursement purposes. BCSC disallowed the interest expense and reduced the depreciation allowable to Orangewood's basis rather than the stepped-up basis claimed by Associates.

An appeal to the Provider Appeals Committee was unsuccessful. That appeal exhausted Hospital's administrative remedies and the Committee's decision became the final decision of the Secretary. *See* 42 U.S.C. § 1395*oo*.

On November 15, 1974, Hospital filed suit in the United States District Court for the Central District of California. Cross motions for summary judgment were filed and the court in 1975 granted Hospital's motion and denied the Secretary's motion for summary judgment. The Secretary appealed to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit held that the district court lacked subject matter jurisdiction and remanded the case to the district court for transfer to the Court of Claims.

We deal with three issues in this case. First, whether Hospital may claim costs in-

curred by Associates as reimbursable costs under the Medicare Act. Secondly, whether the interest expense is allowable as a "reasonable cost" incurred by the provider. Finally, whether the depreciation costs were "reasonable costs" subject to reimbursement under the Medicare Act.

■ Jurisdiction for this appeal can be found in 28 U.S.C. § 1491 (the "Tucker Act") "both because of plaintiff's contract with the Government and also because the Medicare legislation, fairly read, mandates appropriate payment to providers." *Whitecliff v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). Defendant contended oral argument that this court lacks jurisdiction over Part A Medicare cases.[2] Defendant cited *United States v. Erika, Inc.,* — U.S. —, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) as support. That case, however, dealt only with Part B Medicare cases and does not affect our jurisdiction over this Part A Medicare case. We hold that Hospital is entitled to be reimbursed for all interest expenses incurred by reason of the purchase of the hospital. The buyer's basis for depreciation, however, shall be the historical cost of the seller.

### I

The first issue we decide is whether Hospital may claim costs incurred by Associates as reimbursable costs under the Medicare Act.

Defendant contends that the Hospital may not claim reimbursement for either the interest expense or depreciation costs since they were incurred by the Associates. Defendant argues that the Hospital, not the Associates, was the provider of services and only the provider may be reimbursed for those expenses.[3] Plaintiff argues that, for

---

**2.** Medicare provides federal funding for the medical care of the aged and disabled. Part A covers Hospital Insurance Benefits. 42 U.S.C. §§ 1395c–1395i–2. Part B covers Supplementary Medical Insurance Benefits. 42 U.S.C. §§ 1395j–1395w.

**3.** Effective October 1, 1977, the Medicare regulations found at 20 C.F.R. § 405.401 *et seq.*

were redesignated at 42 C.F.R. § 405.401 *et seq.* without substantive change. *See* 42 Fed. Reg. 52826 (1977). Reference throughout this opinion will be made to the regulations in effect at the time the present claims arose, which can be found in Title 20 of the Code of Federal Regulations. 20 C.F.R. § 405.419 provides in pertinent part:

purposes of Medicare reimbursement, the Hospital and Associates should be considered a "single entity" since the Associates completely own the facilities and stock of the Hospital. The applicable Medicare regulations, the Secretary's interpretation of these regulations, and defendant's prior stipulation support plaintiff's position.

■ 20 C.F.R. § 405.427 provides in pertinent part:

§ 405.427 *Cost to related organizations.*

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider *by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization.* However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere. [Emphasis supplied.]

\* \* \* \* \* \*

(c)(2) Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. *An example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner.* Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization. However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price. [Emphasis supplied.]

Associates qualifies as an "organization related to the provider by common ownership" by virtue of owning 100 percent of Hospital's stock and facilities. The regulations allow a provider to include in its allowable costs for reimbursement purposes costs incurred by such a related organization. 20 C.F.R. § 405.427(a) and (c)(2). Therefore Hospital (provider) may include in its reimbursable costs those costs incurred by Associates (related organization). The only fiat, that the costs cannot be higher than those charged for similar services on the open market, is not applicable here. At no time has defendant argued that the interest rate is usurious. Nor has the defendant attacked the reasonableness of the selling price.

Furthermore, section 1006 of the Provider Reimbursement Manual[4] (hereinafter "Manual") provides:

A provider may lease a facility from a related organization within the meaning of the principles of reimbursement. In such case, the rent paid to the lessor by the provider is not allowable as cost. *The provider, however, would include in its costs the costs of ownership of the facility.* Generally, these would be costs *such as depreciation, interest on the mortgage,* real estate taxes and other expenses attributable to the leased facility. The effect is to treat the facility as though it were owned by the provider. \* \* \* [Emphasis supplied.]

This interpretation by the Secretary also allows the provider (Hospital) to be reimbursed by Medicare for the costs of interest

---

"§ 405.419. *Interest expense.*

"(a) *Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost.

"(b) *Definitions*—(1) *Interest.* Interest is the cost incurred for the use of borrowed funds. \* \* \*

"(2) *Necessary.* Necessary requires that the interest:

"(i) Be incurred on a loan made to satisfy a financial need of the *provider.* Loans which result in excess funds or investments would not be considered necessary. [Emphasis supplied.]

"(ii) Be incurred on a loan made for a purpose reasonably related to patient care."

4. Although properly titled Health Reimbursement Manual ("HRM"), the manual is commonly called the Provider Reimbursement Manual. The manual contains "interpretations" issued by the Health Care Financing Administration which are intended to provide informal guidelines and policies for determining reasonable costs under Medicare.

and depreciation incurred by a related organization (Associates).

■ Another factor considered was defendant's stipulation entered into with plaintiff in the district court[5] before this case was transferred to this court for want of jurisdiction. Defendant argues that any decision of the prior court is a nullity since the court lacked subject matter jurisdiction. Though considered, we find it is unnecessary to rely on the stipulation in deciding that the Associates and the Hospital should be considered a "single entity" when determining which costs are reimbursable under Medicare. 20 C.F.R. § 405.427(a) and (c)(2); Manual § 1006; *Stevens Park Osteopathic Hospital v. United States*, 225 Ct.Cl. ——, ——, 633 F.2d 1373, 1379 (1980); *Pasadena Hospital v. United States*, 223 Ct.Cl. 72, 82, 618 F.2d 728, 734 (1980). Therefore, we hold section 405.427 allows reimbursement to Hospital of the costs incurred by Associates.

## II

Having decided the interest expense of Associates can be deductible as a cost incurred to the provider, we must now determine whether the interest qualifies as a "reasonable cost" of services provided Medicare patients as defined by the Medicare Act.[6] "Reasonable cost" is defined in the Act as being the cost actually incurred in providing service to the Medicare patients determined by applicable regulations.[7]

The defendant argues that the interest incurred as part of the sale of the hospital from Orangewood to Associates is not reimbursable since the sale was between related parties. Defendant maintains the transaction is covered by 20 C.F.R. § 405.427, a specific regulation with prophylactic aims to prevent bad faith dealing between related parties at the expense of the Medicare program. We find, however, that § 405.427 is a general regulation concerning related organizations and that § 405.419(c)(2) provides a specific exception to it. A basic tenet of statutory construction is that the specific controls over the general. We therefore hold that § 405.419(c)(2) is the applicable regulation for determining whether Associates' interest expense is deductible by Hospital.

■ Defendant's argument ignores the plain meaning of the regulations. Though § 405.427 deals specifically with related organizations, § 405.419(c)(2) is a *specific exception* to the general rule provided by § 405.427. It states in pertinent part:

(2) *Exceptions to the general rule* regarding interest on loans from controlled sources of funds are made in the following circumstances. Interest on loans to providers by partners, stockholders, or related organizations made prior to July 1, 1966, is allowable as cost, provided that the terms and conditions of payment of

"(1) the lessor of (A) the reasonable cost of such services, as determined under section 1395x(v) of this title, or (B) the customary charges with respect to such services; * * *."

**5.** " * * * Although Rio Hondo Associates actually incurred the additional interest and depreciation expense as the purchaser, it is appropriate for Rio Hondo to make claim for the reimbursement of said expense because Rio Hondo Memorial Hospital, a corporation, and Rio Hondo Associates, a partnership, *are treated as 'one entity' for purposes of reimbursement under the Medicare Act.*" *Rio Hondo Memorial Hospital,* No. CV 74–3376–1H, p. 135, ¶ 10 (C.D.Cal., filed April 30, 1975). [Emphasis supplied.]

**6.** 42 U.S.C. § 1395f(b)(1) (1976) (amended Supp. II, 1979):
"*Amount paid to provider of services*
"(b) The amount paid to any provider of services with respect to services for which payment may be made under this part shall, subject to the provisions of section 1395e of this title, be—

**7.** 42 U.S.C. § 1395x(v)(1)(A) (1976) (amended Supp. II, 1979):
"*Reasonable cost; semi-private accommodations*
"(v)(1)(A) The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; * * *"

such loans have been maintained in effect without modification subsequent to July 1, 1966. * * * [20 C.F.R. § 405.-419(c)(2); emphasis supplied.]

Section 405.419(c)(2) provides for reimbursement of all necessary and proper interest expense, including interest incurred on obligations to related organizations made prior to August 1, 1966, provided such obligations were not subsequently modified. No evidence of modifications was presented to render section 405.419(c)(2) inapplicable. *Cf. Jackson Park Hospital Foundation v. United States,* 228 Ct.Cl. ——, 659 F.2d 132 (1981). Section 405.419's specificity regarding interest expense reimbursement of related parties must necessarily override section 405.427's general regulation of related organizations.

 Furthermore, as originally promulgated 20 C.F.R. § 405 did not provide any exception to the related organization policy as set out in 20 C.F.R. § 405.427.[8] As a result of comments received, a specific exception for interest expenses was made. 20 C.F.R. § 405.419(c)(2). It was recognized that it was a common business practice for proprietary owners of related organizations to lend funds to the related organization. Therefore transactions occurring before July 1, 1966, were deemed to be bona fide business transactions and the interest expense incurred an allowable cost. The transaction in question occurred prior to July 1, 1966, and falls clearly within the express exception. Therefore we conclude that section 405.427 does not preclude Hospital from claiming the interest expense incurred by Associates from its purchase of the assets and stock of the hospital from Orangewood. It is a proper reimbursement under section 405.419.[9]

### III

 The final issue to be resolved is whether the basis for depreciation should be the buyer's (Associates) cost or the historical cost of the seller (Orangewood). We hold that the historical cost of the seller must be used as the buyer's basis for depreciation.

Section 405.415 is the applicable regulation controlling reimbursement for allowance of depreciation. It provides in pertinent part:

§ 405.415 *Depreciation: allowance for depreciation based on asset costs.*

(a) *Principle.* An appropriate allowance for depreciation on buildings and equipment is an allowable cost. The depreciation must be:

(1) Identifiable and recorded in the provider's accounting records;

(2) Based on the historical cost of the asset or fair market value at the time of donation in the case of donated assets; and

(3) Prorated over the estimated useful life of the asset using the straight-line method or accelerated depreciation under the declining balance or sum-of-the-years' digits methods.

(b) *Definitions*—(1) *Historical costs.* Historical cost is the cost incurred by the present owner in acquiring the asset.

\* \* \* \* \* \*

(g) *Establishment of cost basis on purchase of facility as ongoing operation.* In *establishing the cost basis for a facility*

---

**8.** *See* supplemental affidavit of Stanley Katz, ¶ 7, Assistant Bureau Director, Division of Technical Policy of the Department of Health, Education and Welfare. *See also* Introductory Comments to Final Regulations by Robert H. Ball, Commissioner of Social Security, 31 Fed. Reg. 14808 (Nov. 22, 1966).

**9.** In a footnote defendant raises for the first time the question of whether interest on the stock purchase of Associates from Orangewood is a reasonable cost properly reimbursable under section 405.419. Defendant's failure to raise this issue before the Provider Appeals

Committee and treatment of the issue in a footnote were improper. The administrative tribunal was the proper place for consideration of the question, not an appeal to this court. *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000, *modified,* 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). We also note that the Ninth Circuit disagrees with defendant's position. *See Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123 (9th Cir. 1980).

*purchased as an ongoing operation after July 1, 1966,* the price paid by the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of sale. The cost basis for depreciation of depreciable assets shall not exceed the fair market value of those assets at the time of sale. If the sale is not demonstrated to be bona fide, the seller's cost basis shall be the cost basis to the purchaser. [Emphasis supplied.]

Defendant contends that, because related parties are involved, the general related-party principles set out in section 405.427 are applicable in determining the reimbursement allowance for depreciation. Section 405.427 provides:

§ 405.427 *Cost to related organizations.*

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

\* \* \* \* \* \*

(c)(2) Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. An example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner. *Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization.* However, if the price in the open market for comparable services, facilities, or supplies is lower than the cost to the supplier, the allowable cost to the provider shall not exceed the market price. [Emphasis supplied.]

Defendant alleges section 405.427 allows depreciation only for the historical cost of the seller (Orangewood) at the time of the sale. The intent of the regulation, defendant argues, is to prevent related organizations from transferring property to, what in effect is, their alter ego for the purpose of increasing the value of assets. *See Jackson Park Hospital,* 228 Ct.Cl. at ——, 659 F.2d at 132.

Plaintiff argues that section 405.415's specific regulation of depreciation reimbursement distinguishes sales occurring before July 1, 1966, from those after July 1, 1966. Plaintiff urges the court to conclude that section 405.415(g) contains a specific exception sufficient to overcome the general regulation concerning transactions between related parties (§ 405.427) in the same manner as we concluded that section 405.419(c)(2) provides a specific exception for interest expense incurred prior to July 1, 1966. We, however, are not persuaded by plaintiff's argument and decline to adopt his position.

Plaintiff's argument would require this court to interpret section 405.415(g) as containing a specific exception for purchases occurring prior to July 1, 1966. Though section 405.415(g) refers to "the cost basis for a facility purchased as an ongoing operation after July 1, 1966," it does not necessarily follow that the regulation exempts transactions consummated prior to July 1, 1966. Section 405.415(g) at best can be interpreted as ambiguous, and in any event, falls far short of the specificity provided for the interest expense exception. *See* 20 C.F.R. § 405.419(c)(2). Section 405.419(c)(2) explicitly refers to "Interest on loans \* \* \* made *prior* to July 1, 1966 \* \* \*," "*Exceptions* to the general rule \* \* \*," and " \* \* \* without modification *subsequent to July 1, 1966*" (emphasis supplied). On the other hand, section 405.415(g) does not state it is an exception and does not discuss sales *prior* to July 1, 1966, nor does it impose conditions upon sale terms after the effective date of the Act as does the interest exception. 20 C.F.R. § 405.419(c)(2). Rather, the regulation is completely silent as to the earlier

period. To imply an express exception to the general related-party principles from this silence is unreasonable.

This court has held that section 405.427, designed to prevent the enrichment of related organizations at Medicare expense, is the proper regulation for depreciation in a related-organization transaction. *See Jackson Park Hospital, supra.* The court stated:

> * * * Thus, § 405.427 makes it certain that, when the parties to a transaction are related because of common ownership or control, there should be no revaluation upward of the property by fiat of the joint controlling interest. Medicare is not to pay for, or be loaded with, increased costs brought about simply by a sale from one entity to its alter ego.
>
> The sum of it is that the prophylactic rule of § 405.427, as applied here, reasonably supports the dual goals of helping the administrators avoid paying collusive or improperly increased costs, and of reducing the administrative burden. [228 Ct.Cl. at ——, 659 F.2d at 137.]

In *Goletta Valley Community Hospital v. Schweiker,* 647 F.2d 894 (9th Cir. 1981), the court held:

> Once a determination has been made that the organizations are related, the Board need not inquire into whether the reimbursements claimed were reasonable because Regulation 405.427 operates as a prophylactic rule and defines any charges in excess of actual cost as per se unreasonable. * * * Regulation 405.427 operates as a special rule for reimbursement claimed between related organizations. * * * [647 F.2d at 897.]

The above cases clearly support and mandate application of section 405.427 when determining depreciation costs in a related-party transaction. Though the present case differs factually in that the transaction occurred prior to the effective date of the Medicare Act (July 1, 1966), section 405.-415's silence as to such transactions cannot be interpreted as implying an exception for them.

The Manual also reinforces the applicability of section 405.427 to the present related-party transaction. It states:

### 1008. PURCHASE OF FACILITIES FROM RELATED ORGANIZATIONS

· Where a facility is purchased from an organization related to the purchaser by common ownership or control, or where a facility, through purchase, converts from a proprietary to a nonprofit status and the buyer and seller entities are related by common ownership or control, the purchaser's basis for depreciation shall not exceed the seller's basis under the program, as computed in § 114, less accumulated depreciation recognized under the program. Also, accumulated depreciation of the seller under the program shall be considered as incurred by the purchaser for purposes of application of § 132ff. The exception provided under § 1010 of this chapter is not applicable since the sale of such facilities would not meet the requirement that there be an open, competitive market for the facilities furnished. [Provider Reimbursement Manual.]

Plaintiff argues that § 1008 of the Manual cannot be applied since it was not adopted pursuant to the Administrative Procedure Act (hereinafter "APA"), it is inconsistent with Medicare regulations, and its retroactive application to the cost years in question would violate due process guarantees.

█ █ The Manual relates the cost provisions of § 405.427 with the depreciation cost provisions of § 405.415. It merely clarifies the treatment accorded purchases from related organizations; hence it is not an administrative regulation (*Sun City Community Hospital, Inc. v. United States,* 224 Ct.Cl. 201, 624 F.2d 997 (1980)), but rather an interpretive one.[10] *Gosman v. United States,* 215 Ct.Cl. 617, 573 F.2d 31 (1978).

---

**10.** "This manual provides guidelines and policies to implement Medicare regulations which set forth principles for determining the reasonable cost of provider services furnished under the Health Insurance for the Aged Act of 1965, as amended. These 'Principles of Reimburse-ment for Provider Costs' have been published in HRM–1. The provisions of the law and the regulations are accurately reflected in this manual, but it does not have the effect of regulations." Provider Reimbursement Manual.

Because it is only a handbook interpreting the regulation, promulgation under the APA is unnecessary. Furthermore, since the Manual interprets regulations affecting "benefits" under 5 U.S.C. § 553(a)(2), the rule-making procedures of the APA are inapplicable. *St. Francis Memorial Hospital v. United States,* 227 Ct.Cl. ——, 648 F.2d 1305 (1981).

■ We must stress that the Manual only provides guidance. As we looked to § 1006 for guidance concerning the interest expense, we now consider § 1008 in the same light concerning depreciation costs. We recognize that the Provider Reimbursement Review Board may have taken a contrary position. *See* [1975] Medicare and Medicaid Guide (CCH) ¶ 27,604. But the Manual is an official declaration of HEW policy and as such is more persuasive to the court. Because we view the Manual only as being interpretive,[11] we do not find any merit in either of plaintiff's other contentions.

■ Assuming arguendo that § 405.-415(g) does contain an exception for sales prior to July 1, 1966, it further provides that "the price paid the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of sale." Section 405.415(g) clearly places the burden upon the plaintiff to demonstrate that the sale was in good faith and for a price comparable to fair market value. Plaintiff has failed to present *any* evidence concerning the sale. It is insufficient that the Government has failed to challenge or prove that the sale was not bona fide. Plaintiff's burden of proving that the price did not exceed fair market value has not been met, and therefore, plaintiff has failed to prove that

any exception contained in § 405.415(g) applies to the present case.[12]

We therefore hold and order that interest expense incurred by the Hospital is properly reimbursable to Associates for the taxable years ending October 31, 1966, and October 31, 1967. Plaintiff's motion for summary judgment is granted on this issue and defendant's cross motion for summary judgment denied. We further order Associates to use the cost basis of Orangewood when determining its reimbursement of depreciation costs. On this issue, plaintiff's motion for summary judgment is denied and defendant's cross motion for summary judgment granted.

Judgment is therefore entered for the plaintiff and defendant as stated above and we remand this case to the trial division pursuant to Rule 131(c) for a quantum determination of plaintiff's Medicare reimbursement for the years ending October 31, 1966, and October 31, 1967.

---

11. In any case, the interpretation of regulations must give way to the plain meaning of the regulations themselves. *United States v. Nixon,* 418 U.S. 683, 694, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *Bray v. United States,* 207 Ct.Cl. 60, 64, 515 F.2d 1383, 1385 (1975). We have interpreted the regulation (§ 405.415) as *not* allowing an exception to the general related-parties' principle as set out in § 405.427.

Our interpretation makes inquiry into the Manual's promulgation unnecessary. Clearly the Manual could not override Congress' intent as stated in the regulations themselves.

12. Any and all arguments not directly addressed in this opinion have been carefully considered and found to be without merit.