[No. 14008-0-II.   Division Two.   December 2, 1992.]

CLARK INSTITUTE, INC., *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Thomas H. Grimm* and *Inslee, Best, Doezie & Ryder P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gretchen M. Leanderson, Assistant,* for respondent.

MORGAN, A.C.J. — The Superior Court affirmed an administrative ruling holding that Clark Institute was not entitled to reimbursement for certain costs. Clark Institute appeals; we affirm.

Clark Institute is a home for the mentally retarded. Before 1978, it was operated by a partnership composed of Mary Johnson and her brother, Lester Watson. The two were equal partners.

On January 24, 1978, Johnson purchased Watson's interest. According to the parties' stipulation, she paid $292,562.17. Primarily, she paid by giving Watson her stock in Watson Nursing Home, Inc., a closely held corporation. After purchasing Watson's interest, Johnson was the sole proprietor of Clark Institute.

According to Johnson's affidavit, her purchase of Watson's interest was necessitated by friction that had arisen between

him, her, and their respective spouses. For purposes of this opinion, we assume that her affidavit is true.

In 1978, the State of Washington was participating in the Medicaid program. Created by title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, that program is a federal grant in aid program under which the state and federal governments share the cost of nursing home care for the poor in approximately equal shares.[1] *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 L. Ed. 2d 455, 110 S. Ct. 2510 (1990).

In 1978, Washington's participation was governed in part by former RCW 74.09.120. That statute provided:

> The department shall purchase nursing home care by contract. The department shall establish regulations for reasonable nursing home accounting and reimbursement systems which recognize relevant cost related factors for department of social and health services patients . . ..

Pursuant to this statute, the State had promulgated various regulations. WAC 388-96. Nursing homes could recover, through depreciation, the cost of acquiring certain tangible assets. WAC 388-96-553, -555, -557. Depreciation was to be calculated using the nursing home's cost of acquiring such assets, but without considering the cost of acquiring assets from a "related organization". Thus, former WAC 388-96-559 (1977) stated:

> (1) The depreciation base shall be the historical cost of the contractor in acquiring the asset from an unrelated organization . . .. (2) Where depreciable assets are acquired from a related organization, the contractor's depreciation base shall not exceed the base the related organization had or would have had under the program.

Former WAC 388-96-010 defined a "related organization" as:

> [a]n entity which, to a significant extent, is under common ownership and/or control with, or has control of or is controlled, by the contractor. An entity is deemed to "control" another entity if it has a five percent or greater ownership interest in the other, or if it has capacity, derived from any

---

[1] In 1990, the federal share of Medicaid payments was about 53 percent and the State's share was about 47 percent. *Folden v. Department of Social & Health Servs.*, 744 F. Supp. 1507, 1511 (W.D. Wash. 1990).

financial or other relationship, and whether or not exercised, to influence directly or indirectly the activities of the other.

Former WAC 388-96-010 defined an "entity" as "[a]n individual or legal organization capable of entering enforceable contracts (e.g., corporation, partnership)."

Between 1978 and 1985, Clark Institute incurred Medicaid overpayment obligations to the Department of Social and Health Services (DSHS) in the amount of approximately $245,000. During the preliminary settlement for the 1983 cost year, DSHS requested a $33,000 refund. At this time, the Institute claimed, for the first time, that it was entitled to be reimbursed for the $292,562 that Johnson had paid Watson in January 1978.

The Department disallowed the claim. Clark Institute then asked for and received a hearing before an administrative law judge. At the hearing, the parties submitted the facts by stipulation and affidavit. The judge ruled that the January 24, 1978, transaction was not between related parties.[2]

The Department then appealed to an administrative review judge, who held that the January 1978 transaction was between related parties. Clark Institute then appealed to the Superior Court, which affirmed the review judge. At all three levels, Clark Institute's position was that the statutes and regulations in effect in 1978 should be applied.

■ Clark Institute now appeals to this court. Because the parties presented the tribunals below with uncontroverted facts set forth in a written stipulation and affidavits, this court reviews de novo, under the error of law standard. Former RCW 34.04.130(6)(d); *Duncan Crane Serv., Inc. v. Department of Rev.*, 44 Wn. App. 684, 688, 723 P.2d 480 (1986).

---

[2]Although the administrative law judge found that the January 1978 transaction involved unrelated organizations, he nevertheless denied reimbursement because, in his view, Clark Institute had failed to obtain a required "certificate of need". Later, the Superior Court ruled that Clark Institute was not precluded from obtaining reimbursement on that ground, and that ruling has not been cross-appealed to this court.

Former WAC 388-96-010 (1977) is at the core of this dispute. Quoted above, it provides that two or more entities are "related" if commonly owned or, alternatively, if one "has capacity, derived from any financial or other relationship, and whether or not exercised, to influence directly or indirectly the activities of the other." The same regulation further provides that "entity" includes individuals and partnerships.

The "entities" here are Johnson and Watson. Clark Institute contends that at the time of the January 1978 transaction, they were not "related" under either of the tests contained in former WAC 388-96-010.

Johnson and Watson were not "related" due to common ownership. As individuals, neither could "own" the other.

■ However, Johnson and Watson were "related" due to capacity to control. Just before the January 1978 transaction, they were partners, with each owning a 50 percent interest in Clark Institute.[3] They were longtime business partners not only in Clark Institute, but in other ventures as well. They were also brother and sister.[4] Under these circumstances, it appears to us, as it apparently did to the

---

[3] We have found two cases in which one partner bought out another, then claimed reimbursement pursuant to Medicare regulations. In each, the court held that the partners were related entities and disallowed reimbursement. *In re Dickinson Nursing Ctr.*, 353 N.W.2d 754 (N.D. 1984); *Demisay v. Axelrod*, 87 A.D.2d 667, 448 N.Y.S.2d 834 (1982). Neither case is precisely on point, because the regulations in issue were not identical to the one before us here. Nevertheless, each tends to support the proposition that partners are "related" for purposes of claiming reimbursement under Medicare regulations.

[4] Clark Institute relies heavily on *Bremerton Convalescent Ctr.*, Department of Social & Health Servs. docket 0581 L-060 (1982). According to that case, a blood relationship should trigger scrutiny, but is not enough, by itself, to establish that a transaction is between related entities. For today, we have no occasion to question that proposition. However, we note a contrary federal case, in which a corporate health care provider leased assets from a partnership, one of whose partners was the father-in-law of the provider's sole shareholder, and in which the transaction was held to be between related parties. HCFA Admin. Dec. July 3, 1985, rev'g PRRB Dec. 85-D52, Medicare and Medicaid Guide (CCH) 34,921, 34,830. We also note federal administrative policy, which declares:

The existence of an immediate family relationship will create an irrebuttable presumption of relatedness through control or attribution of ownership or

Superior Court, that each had the "capacity, derived from . . . [a] financial or other relationship, and whether or not exercised, to influence directly or indirectly the activities of the other." Former WAC 388-96-010.

Clark Institute argues that Johnson and Watson had no capacity to control each other in January 1978, because they were in a dispute situation and the purpose of their transaction was to end their business relationships. Although we assume the truth of these factual assertions, we deem them insufficient to defeat our conclusion that Johnson and Watson had the "capacity, . . . whether or not exercised, to influence", at least "indirectly", the activities of each other. Former WAC 388-96-010.

Clark Institute seems to argue there was no actual control between Johnson and Watson and that therefore they were unrelated entities engaging in an arm's length transaction. However, the regulation focuses not on actual control, but on the capacity to control, whether or not exercised. Thus, the exercise of actual control is not the test, and even if neither party actually controlled the other at the time of the January 1978 transaction, they were still related entities.

For the first time on appeal, both Clark Institute and the State argue that regulations adopted after 1978 should be applied in this case. Clark Institute argues that after-adopted regulations governing nursing homes should be applied. WAC 388-96. The State argues that after-adopted regulations governing institutes for the mentally retarded (IMR's) should be applied. WAC 275-38.

Assuming that after-adopted regulations governing nursing homes should be applied, Clark's position on this appeal

equity interests where the significance tests of common ownership and control are met.

*Health Reimbursement Manual* § 1004, reprinted in Medicare and Medicaid Guide (CCH) 5691 (1988). Commonly called the Provider Reimbursement Manual, this manual has been said to be persuasive when courts are interpreting Medicare and Medicaid regulations. *See, e.g., Rio Hondo Mem. Hosp. v. United States*, 689 F.2d 1025 (Ct. Cl. 1982); *Valley View Comm'ty Hosp. v. United States*, 679 F.2d 857, 861 (Ct. Cl. 1982).

836

is not improved. Former WAC 388-96-559(1), (2) (1981) provides, "The depreciation base shall be the historical cost of the contractor in acquiring the asset in an arm's length transaction . . .." Former WAC 388-96-010(4) limits arm's length transactions to those in which the buyer and seller are "unrelated". Thus, even under these regulations, a depreciation base cannot include the cost of a transaction between related entities, and the analysis made above is not altered.

Assuming that after-adopted regulations governing IMR's should be applied, the State's argument is well taken. The IMR regulations provide that a transaction must be arm's length in order for an entity to receive reimbursement, and that a transaction cannot be arm's length if it is between people related by blood. WAC 275-38-725(1), (2); former WAC 275-38-001(5).

Affirmed.

ALEXANDER and SEINFELD, JJ., concur.