**LOCKHEED CORPORATION, Appellant,**

v.

**Sheila E. WIDNALL, Secretary
of the Air Force, Appellee.**

No. 95–1025.

United States Court of Appeals,
Federal Circuit.

May 15, 1997.

Neil O'Donnell, Rogers, Joseph, O'Donnell & Quinn, San Francisco, CA, argued, for appellant. With him on the brief was Patricia A. Meagher. Of counsel on the brief was Robert C. Gusman, Lockheed Corporation, of Calabasas, California.

Harold D. Lester, Jr., Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for appellee. On the brief were Thomas P. McLish, Attorney, Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director.

Clarence T. Kipps, Jr., Miller & Chevalier, Washington, D.C., for amici curiae. With him on the brief were Kevin C. Dwyer and Alan C. Brown.

Before ARCHER, Chief Judge, PLAGER, and RADER, Circuit Judges.

ARCHER, Chief Judge.

Lockheed Corporation (Lockheed) appeals the decision of the Armed Services Board of Contract Appeals (ASBCA or Board), ASBCA No. 36,910, 94–3 BCA & 27,101, disallowing certain interest payments under Defense Acquisition Regulation (DAR) § 15–205.17 (1969). The Board held that the interest paid on an underpayment of state taxes was not allowable as reimbursable corporate overhead because it represented "interest on borrowings" within the meaning of DAR § 15–205.17. We reverse.

## BACKGROUND

Lockheed timely filed its federal income tax and state franchise tax returns for years 1973 and 1974 and paid its computed tax liabilities in full. In 1982 the Internal Revenue Service (IRS) audited Lockheed's 1973 and 1974 tax returns and disallowed several deductions resulting in a greater taxable income. No additional federal taxes were due as a result of the increased taxable income because Lockheed had net operating losses

which could be carried over to those years. However, because the State of California's tax laws do not permit operating losses to be carried over, these adjustments to its state tax returns resulted in an additional liability to California of $708,397 in franchise taxes and $645,226 in interest.

Lockheed allocated the additional state franchise tax and interest to the overhead for its various business segments in accordance with the company's accounting practices. In 1982, however, two business segments were no longer in existence. As a result, Lockheed included the amount that would have been allocated to these segments in its residual expense pool for fiscal year 1979, which was the first fiscal year with an open indirect cost rate.

When Lockheed's allocations to its residual corporate overhead were reviewed in connection with its 1979 corporate overhead review, the contracting officer challenged the allowability of the interest on the additional state taxes. According to the contracting officer, that interest payment was an unallowable expense under the cost principle in DAR § 15–205.17. Lockheed disagreed on the ground that the interest was not "interest on borrowings" as defined in DAR § 15–205.17. The contracting officer chose two contracts as test vehicles [1] and issued a final decision disallowing Lockheed's claims for the interest on the state taxes allocated to overhead.[2] Lockheed appealed the contracting officer's determination to the ASBCA.

The ASBCA sustained the contracting officer's decision in a 3–2 decision. A majority of the Board ruled that the interest assessed by California was unallowable pursuant to DAR § 15–205.17. The majority reasoned that DAR § 15–205.41 is the only exception to DAR § 15–205.17 which permits interest on state taxes to be treated as an allowable cost, and it found that none of the conditions

of that cost principle were satisfied. The two dissenting opinions rejected the majority's conclusion that the state tax deficiency was a form of borrowing for purposes of DAR § 15–205.17.

## DISCUSSION

The DAR [3] set forth the cost principles for determining what costs are allowable under the cost-reimbursement contracts at issue in this case. Under these regulations, the total cost of a contract is defined as "the sum of the allowable direct and indirect costs allocable to the contract." DAR § 15–201.1. The allowability of an item of cost is determined by considering its reasonableness, its allocability, its compliance with generally accepted accounting principles, and whether there are any limitations or exclusions set forth in the DAR or the contract. DAR § 15–201.2. One such limitation or exclusion is found at DAR § 15–205.17. It provides:

*Interest and Other Financial Costs.* Interest on borrowings (however represented), bond discounts, costs of financing and refinancing operations, legal and professional fees paid in connection with the preparation of prospectuses, costs of preparation and issuance of stock rights, and costs related thereto, are unallowable except for interest assessed by State and local taxing authorities under the conditions set forth in 15–205.41.

DAR § 15–205.17. The Board decided this case solely on the ground that the interest payment on the state tax deficiency is unallowable as a cost under DAR § 15–205.17.[4]

Lockheed contends that the Board's decision treating the additional state taxes as "borrowings" is inconsistent with the plain language of the regulation. It argues that DAR § 15–205.17 applies, not to interest generally, but to interest "on borrowings." According to Lockheed, the Board disregard-

---

**1.** Contract Nos. F33657–77–C–0330 and F33615–78–C–5235.

**2.** Lockheed first claimed $15,706 in interest as the amount allocated to its corporate residual expense pool for these contracts. Lockheed subsequently reduced its claim to $8,260, and this is the amount at issue in this appeal.

**3.** The DAR was superseded in 1984 by the Federal Acquisition Regulation (FAR).

**4.** The only issue before this court is the correctness of that decision. The allowability of the interest payment in other respects, as well as the applicability of any other disallowance provisions, is not before us.

ed this qualifying language and, as a result, interpreted "interest" too broadly. Lockheed also contends that such an expansive application of the regulation to interest on an inadvertent tax deficiency is inconsistent with the policy underpinning of the regulation and its historical evolution.

The government, on the other hand, also relies on the plain language of the regulation and points to the further qualifying language that interest on borrowings "(however represented)" is not an allowable cost. It argues that Lockheed erroneously seeks a narrow construction of this language to include only intentional borrowings. The government also asserts that the exception for interest incurred under the conditions set forth in DAR § 15–205.41 would be meaningless under Lockheed's interpretation of the regulation and that the regulatory history cited by Lockheed cannot be considered authoritative.

■ The interpretation of a regulation is a question of law which we review *de novo. Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995) (in banc). To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning. *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *see also Rio Hondo Mem'l Hosp. v. United States,* 231 Ct.Cl. 657, 689 F.2d 1025, 1034 n. 11 (1982) ("In any case, the interpretation of regulations must give way to the plain meaning of the regulations themselves.").

By its terms, DAR § 15–205.17 applies to "interest on borrowings." A borrowing is generally defined as a loan. *See* Eitan A. Aveneyon, *Dictionary of Finance* 64 (1988) (defining borrowing as "[t]he process of receiving a loan from a lender, for a certain period, for a consideration in the form of interest"). Contrary to the Board's interpretation, a loan does have an intent element: it requires an intent to receive something with the intent to return the same or equivalent. *See Webster's Third New International Dictionary* 256 (1971) (defining borrow as "to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender").

■ This interpretation is consistent with the scope and language of DAR § 15–205.17, which by its terms applies to the costs of raising capital. DAR § 15–205.17 pertains not merely to "Interest" but to "Interest and Other Financial Costs." Indeed, as Judge Watkins points out in his dissent, DAR § 15–205.17 references "[i]nterest on borrowing (however, represented), bond discounts, costs of financing and refinancing capital (net worth plus long-term liabilities), legal and professional fees paid in connection with the preparation and issuance of stock rights, and costs related thereto," all of which relate to methods of raising capital. Thus, DAR § 15–205.17, by its plain language, does not make all interest payments unallowable; rather, it provides that interest paid to raise capital is unallowable.

■ In this case, nothing in the record shows that Lockheed had an intent to borrow money from the State of California. An inadvertent tax deficiency is not generally a method of raising capital. To the contrary, the record provides ample evidence showing that Lockheed prepared its tax returns in good faith and did not intend to underpay its taxes. It did not, by its tax fillings, seek to obtain capital or otherwise to finance its operations. Accordingly, the tax assessment was not a borrowing, and it necessarily follows that the interest on the tax assessment is not "interest on borrowings."

Although we need go no further because the language of the regulation is clear, *Manhattan Savings Bank v. United States,* 214 Ct.Cl. 599, 557 F.2d 1388, 1390 (1977), the regulatory history supports our interpretation that DAR § 15–205.17 is limited strictly to "interest on borrowings." In the early drafts of this cost principle, prepared as part of Armed Services Procurement Regulation (ASPR) § 15–205.17, "interest (however represented)" was unallowable. The drafters of the ASPR inserted into the final version the words "on borrowings" after the word "interest" to provide that "interest on borrowings (however represented) . . . [is] unallowable." Thus, the drafters specifically limited the application of this cost principle to "interest on borrowings" as opposed to "interest" gen-

erally. The limitation to "interest on borrowings" has remained in each of the subsequent versions of this cost principle, DAR § 15–205.17 and FAR § 31.205–20. Accordingly, we conclude that by construing DAR § 15–205.17 to include interest on an inadvertent state tax deficiency, the Board improperly read the words "on borrowings" out of the regulation.

We are not persuaded by the government's arguments that the term borrowing should be given anything other than its plain and ordinary meaning described above. Contrary to the government's contention, our interpretation does not render the reference in DAR § 15–205.17 to DAR § 15–204.41 superfluous.

DAR § 15–205.41, pertaining to "Taxes," sets forth a procedure for challenging tax assessments believed to be illegal or erroneous. It further provides:

> Reasonable costs of any such action undertaken by the contractor at the direction or with the concurrence of the contracting officer are allowable. *Interest* and penalties incurred by a contractor by reason of the nonpayment of any tax at the direction of the contracting officer *or by reason of the failure of the contracting officer to issue timely direction after prompt request therefor, are also allowable.*

DAR § 15–205.41(c) (emphasis added).

The government urges that the Board's decision is correct. It argues that because a specific category of interest assessed by state or local taxing authorities is made allowable under this exception, by negative inference, interest on taxes is an unallowable cost in all other instances. Thus, in the government's view, an allowance of interest in this case would have the effect of making the reference to the DAR § 15–205.41 superfluous.

The exception contained within DAR § 15–205.17 must be construed in light of the general rule which, as discussed above, plainly deals only with interest on borrowed capital. While reconciling the exception with the rule may initially seem to present some difficulties, we are not convinced that the exception is rendered meaningless under our interpretation. To explain, *intentionally* underpaid taxes could be considered a form of borrowing or an indirect way of financing the contractor under DAR § 15–205.17 which would require that the interest paid thereon be treated as an unallowable cost. The exception, however, allows a contractor, either with the approval or at the request of the Government, to challenge a tax believed to be illegal or improperly assessed. Interest on an intentional underpayment of a tax for this purpose is allowed by DAR § 15–205.17. We are, therefore, not convinced that this exception should, by negative inference, trigger the disallowance of interest that is not related to borrowing or raising capital.

Thus, contrary to the government's argument, the allowance of interest on an unintentional tax deficiency does not negate any portion of the regulation. Indeed, such an allowance gives meaning to the term "on borrowings" as well as to the exception for interest on intentionally underpaid state taxes where approval of the contracting officer has been sought as required by DAR § 15–204.41.

## CONCLUSION

DAR § 15–205.17 makes interest on the costs of raising capital, *i.e.,* an intentional borrowing, an unallowable cost. An inadvertent tax deficiency is not by definition a "borrowing" or a form of raising capital, and DAR § 15–205.17 does not, therefore, preclude the allowability of interest in this case. The only issue in this appeal is whether or not the interest payment at issue is allowable under DAR § 15–205.17. We conclude that it is. The parties have stipulated that if Lockheed prevails in this appeal, the amount of $8,260 would be allowable.

*REVERSED.*