**INGALLS SHIPBUILDING, INC., Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

**No. 96–1413.**

United States Court of Appeals, Federal Circuit.

July 21, 1997.

George M. Simmerman, Jr., Assistant General Counsel, Ingalls Shipbuilding, Inc., Pascagoula, MS, argued, for appellant. With him on the brief was William J. Powers, Jr., Vice President and General Counsel.

Phyllis Jo Baunach, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Joseph A. Kijewski, Assistant Director. Of counsel on the brief was Ray Johansmeier, Office of General Counsel, United States Navy, of Pascagoula, MS.

Before MICHEL, PLAGER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Ingalls Shipbuilding, Inc. appeals from the final decision of the Armed Services Board of Contract Appeals granting summary judgment for the United States Navy on the ground that payments made by Ingalls under 33 U.S.C. § 914(e) (1994) were "in the nature of a fine or penalty" and thus were not chargeable to its contracts with the Navy pursuant to Federal Acquisition Regulation (FAR) § 31.205–15 or its predecessor provision. *Ingalls Shipbuilding, Inc.*, ASBCA No. 48302, 96–2 BCA ¶ 28349, 1996 WL 263350 (1996). Because Ingalls' payments under § 914(e) were not "fines and penalties" within the meaning of the relevant statues and regulations, and because those payments were also not "interest on borrowings" within the meaning of FAR § 31.205–20 or its predecessor provision, we reverse the decision of the board.

## BACKGROUND

The facts in this case are not in dispute. Ingalls is a shipbuilder in the business of constructing, repairing, and overhauling naval surface combatant ships. In the course of its business, it has entered into numerous contracts with the Navy. Ingalls is subject to the provisions of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1994),[1] which provides certain classes of maritime employees with compensation for work-related injuries. *See* 33 U.S.C. §§ 902–03. Section 914 of the LHWCA is entitled "Payment of Compensation" and provides that "compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer." 33 U.S.C. § 914(a). The first semi-monthly installment of compensation becomes due no later than fourteen days after the employer is notified of a compensable injury, 33 U.S.C. § 914(b), unless the employer controverts the right to compensation by filing a timely notice stating, *inter alia*, "the grounds on which the right to compensation is controverted." 33 U.S.C. § 914(d).

Section 914(e) (entitled "Additional compensation for overdue installment payments payable without award") mandates that under certain circumstances, an employer pay additional compensation. It provides:

> If any installment of compensation payable without an award is not paid within fourteen days after it becomes due, as provided in [§ 914(b) ], there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under [§ 914(d) ], or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

33 U.S.C. § 914(e). Thus, absent a valid excuse granted by the Deputy Commissioner,

---

**1.** All references to the United States Code (U.S.C.) are to the 1994 edition.

an employer who fails either to timely controvert a claimant's right to compensation or to timely pay the initial pre-award installment will owe an ultimately successful claimant 110% of the late pre-award installment payments. Payments under § 914(e) are based on the amount of compensation owed but not yet paid, and thus serve both to compensate claimants for delays and to encourage employers either to make voluntary payment or to controvert claims. In this way, § 914(e) hastens the adjudication of disputed claims. *See National Steel and Shipbuilding Co. v. United States Dep't of Labor, Office of Workers' Comp. Programs,* 606 F.2d 875, 880 (9th Cir.1979) (noting that "the 10 percent assessment for failure to file the notice acts as an incentive to induce employers to bear their burden under the Act and to bring any compensation disputes to the attention of the Department"); *Watkins v. Newport News Shipbuilding & Dry Dock Co.,* 8 B.R.B.S. 556, 560 (1978), *vacated and remanded on other grounds sub nom., Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Comp. Programs,* 594 F.2d 986 (4th Cir.1979) ("[The § 914(e) payments] do not exist merely to give employers a financial incentive to pay compensation voluntarily and promptly. They are, in fact, additional amounts paid to the claimant to compensate for the inconvenience and expense of supporting herself during the time when her earning capacity was reduced or destroyed and compensation was not being paid.").

Between October 1, 1986 and May 14, 1987, approximately two thousand LHWCA claims were filed against Ingalls alleging noise-induced hearing loss injuries. Ingalls states that it could not prudently and in a timely manner investigate each claim in this unprecedented mass filing. Therefore, because any improvidently issued pre-award payments would not have been not recoverable, and because Ingalls wished to save itself and the Navy unnecessary costs, Ingalls decided not to pay the initial pre-award installments when they became due, but instead responded only by filing generic answers to

each claimant. Ingalls then sought and received an excuse for deferring action from the Deputy Commissioner. However, the Fifth Circuit later determined that Ingalls' generic answers were insufficient to serve as § 914(d) controversions and that the Deputy Commissioner's grant of the excuse was invalid as an abuse of his discretion. *See Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Comp. Programs,* 976 F.2d 934, 937–38 (5th Cir.1992) (*Ingalls II*); *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Comp. Programs,* 898 F.2d 1088, 1095–96 (5th Cir.1990) (*Ingalls I*). Accordingly, Ingalls was required to make § 914(e) payments to the successful claimants.

Ingalls attempted to recover the cost of its § 914(e) payments, which it now estimates total $190,598.54, by charging proportionate shares of the payments to sixty-six of its contracts with the Navy. Each of these contracts explicitly provides for the reimbursement/payment of either the indirect costs of "State and Federal Workmen's Compensation" or the costs "to provide and maintain workers' compensation ... insurance." Each contract is also subject to the cost principles of the Federal Acquisition Regulation (FAR) or, for those contracts entered into prior to 1984, the Defense Acquisition Regulation (DAR).[2]

In February 1993, the Defense Contract Audit Agency (DCAA) issued an audit report concerning Ingalls' § 914(e) payments, computed the amount of the then-issued payments, and recommended that the payments not be chargeable to the Navy contracts. On November 21, 1994, the Contracting Officer (CO), adopting the DCAA report, issued a final decision declaring the § 914(e) payments to be unallowable under the cost principles defined in specific provisions of the FAR or DAR.

Under these regulations, a cost either directly or indirectly incurred in performing a contract may be chargeable to that contract if, *inter alia,* it is "allowable." *See* FAR § 31.204(a) (1996); *see also* DAR § 15–201.1

---

**2.** The DAR, last codified at 32 C.F.R. pts. 1–39 (1984), was superseded in 1984 by the FAR, which is codified at 48 C.F.R. pts. 1–99 (1996).

(1984) (defining total cost as "the sum of the allowable direct and indirect costs allocable to the contract"). Whether a cost is allowable is determined by considering, *inter alia*, whether a specific FAR or DAR provision limits the allowability of the cost. *See* FAR § 31.201–2(5) (1996); DAR § 15–201.2(iv) (1984). The specific FAR provisions on which the CO based his conclusion that the § 914(e) payments were unallowable costs read:

> Costs of fines and penalties resulting from violations of, or failure of the contractor to comply with, Federal, State, local, or foreign laws and regulations, are unallowable except when incurred as a result of compliance with specific terms and conditions of the contract or written instructions from the contracting officer.

FAR § 31.205–15(a) (1996) ("Fines, penalties, and mischarging costs."), and

> Interest on borrowings (however represented), bond discounts, costs of financing capital (net worth plus long-term liabilities), legal and professional fees paid in connection with preparing prospectuses, costs of preparing and issuing stock rights, and directly associated costs are unallowable except for interest assessed by State or local taxing authorities under the conditions specified in [FAR § ] 31.205–41 (but see [FAR § ] 31.205–28).

FAR § 31.205–20 (1996) ("Interest and other financial costs."). The corresponding DAR provisions are identical to the FAR provisions in all relevant aspects; DAR § 15–205.13 (1984) pertains to fines and penalties, while DAR § 15–205.17 pertains to interest on borrowings.[3] The exception of § 31.205–15 does not apply because, as explained above, the § 914(e) payments were not incurred as a result of Ingalls' compliance with a specific provision of the contract or the CO's instructions.

Ingalls appealed the CO's final decision to the board. Before the board, both parties moved for summary judgment, and the board granted the Navy's motion. The board concluded that the § 914(e) payments "are unallowable costs in the nature of a fine or penal-

ty under FAR § 31.205–15," and did not address the "interest on borrowings" provision. The board observed that "[a]lthough section 914(e) does not expressly use the word 'penalty,' it is readily apparent that this additional compensation is a penalty imposed for failure to make timely payments to claimants. There is nothing in the LHWCA that suggests a legislative intent to the contrary." The board also noted a number of judicial opinions in which other courts of appeals referred to payments made pursuant to § 914(e) as "penalties." Finally, the board distinguished the precedent of the boards of contract appeals interpreting § 31.205–15. Ingalls filed a timely appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (1994).

## DISCUSSION

■ The standard under which we review a decision of the board is dictated by the Contract Disputes Act, which provides in relevant part:

> [t]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b). We review questions of law, such as the meaning of a regulation or a statute, *de novo. See Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995) (in banc) (interpreting a regulation); *Rosete v. Office of Personnel Management,* 48 F.3d 514, 517 (Fed.Cir.1995) (interpreting a statute). Notwithstanding this lack of deference on questions of law, we accord respect to the board's interpretation of regulations that are within its field of expertise: federal procurement law. *See Erickson Air Crane Co. v. United States,* 731 F.2d 810, 814 (Fed.Cir. 1984) ("[L]egal opinions by tribunals having expertise are helpful to us, if not compelling.").

---

3. Because the DAR and FAR provisions are identical for purposes of this appeal, we will refer only to the FAR provisions in the remainder of this opinion.

## A. *Fines and Penalties*

█] Ingalls challenges the board's legal conclusion that § 914(e) payments are fines and penalties within the meaning of § 31.205–15. In support of its position, Ingalls first argues that § 914 is not a penal provision, because the LHWCA explicitly provides for penalties in various sections other than § 914 and § 944(c)(3) describes fines and penalties in such a way as to effectively preclude § 914(e) payments from being so considered. Ingalls also argues that § 914(e) payments do not possess the judicially-developed characteristics of a penalty, because they are (1) paid to individuals, not the state; (2) addressed to private, not public, wrongs; (3) directly related, on a percent basis, to an actual harm suffered and thus are compensatory in nature; and (4) not associated with willful or bad faith actions.

In response, the Navy argues that although § 914(e) serves to compensate injured workers and encourage prompt responses from employers, it also serves as a penalty. This penal aspect, according to the Navy, is sufficient to meet the requirements of § 31.205–15. The Navy also argues that the cases relied on by Ingalls do not support the above-listed criteria as tests of a penalty. Finally, the Navy reiterates the board's observation that many courts refer to § 914(e) payments as "penalties." For the reasons stated below, we do not agree with the Navy; Ingalls' § 914(e) payments are not fines or penalties within the meaning of § 31.205–15.

█ We first consider the FAR provision. "To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning." *Lockheed Corp. v. Widnall,* 113 F.3d 1225, 1227 (Fed.Cir.1997) (citing *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). However, neither § 31.205–15 nor any other provision of the FAR attributes a specific meaning to the words "fines and penalties." Similarly, common definitions of the words "fine" and "penalty" offer little assistance. Black's Law Dic-

tionary notes that a "penalty" is "[a]n elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary 1133 (6th ed.1990). Likewise, the common definition of "fine" does not answer our inquiry, for it requires one to understand the elusive meaning of the word penalty. *Id.* at 632 (stating that a fine "may include a forfeiture or penalty").

Neither this court, our predecessor courts, nor any other circuit or trial court has previously considered the scope of this FAR provision.[4] Apparently, the only tribunals to have interpreted this provision are the agency boards of contract appeals. *See, e.g., Joint Action in Community Serv., Inc.,* LBCA No. 83–BCA–18, 87–1 BCA ¶ 19506, 1986 WL 20326 (1986) (holding that a payment made to settle a discrimination claim was an allowable cost); *Olin Corp.,* ASBCA Nos. 15688, 15818, 72–2 BCA ¶ 9539, 1972 WL 1587 (1972) (holding that an additional compensation payment arising from a violation of state-law safety orders, not from bad faith or willful misconduct, was an allowable cost); *McDonnell–Douglas Corp.,* NASABCA No. 865–28, 68–1 BCA ¶ 7021, 1968 WL 858 (1968) (holding that because a compensation payment did not result from a violation of or a failure to comply with a state law or regulation, it was an allowable cost). Even in these cases, however, the boards did not consider whether an additional compensation payment such as that mandated by § 914(e) is a "penalty" within the meaning of § 31.205–15. Lacking any useful common definition of the operative terms and in the absence of a specific meaning for these terms in the FAR, we must rely on other sources to determine whether payments made pursuant to § 914(e) are within the ambit of § 31.205–15.

█ We therefore turn to the statute which imposes the payment in question. When called upon to interpret a statute, our

---

**4.** In *Transtechnology Corp., Space Ordnance Systems Division v. United States,* 22 Cl.Ct. 349, 359 n. 8 (1990), the United States Claims Court apparently considered the scope of this FAR provision, but noted only that "[n]either legal expenses nor cleanup costs are fines and penalties."

duty is "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957). In discharging that duty, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) ("To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute."). Accordingly, in construing § 914(e), and specifically in deciding whether it creates a penalty, we look to the statutory scheme of which it is a part, the LHWCA.

The LHWCA, read as a whole, specifies how and to what extent injured employees will be compensated. We first note that the title of § 914 is "Payment of compensation" and the title of § 914(e) contains the words "additional compensation." While titles are not conclusive indicators of the meaning of provisions which are listed thereunder, they do tell us something, particularly in comparison with other provisions of a statute. In this case, the title gives us a first clue that payments under § 914(e) are compensation, not penalties. Also helpful is the fact that the LHWCA provides elsewhere for a variety of fines and penalties. Specifically, nine distinct sections of the LHWCA expressly provide for "fines" or "penalties" against employers. *See* 33 U.S.C. §§ 914(g) ("civil *penalty* in the amount of $100" for failure to notify deputy commissioner that compensation payments were stopped), 915(a) ("*fine* of not more than $1,000" for making deductions from an employee's salary to pay an insurance premium), 930(e) ("civil *penalty* not to exceed $10,000" for knowingly or willfully failing to send injury report to the Secretary), 931(c) ("*fine* not to exceed $10,000 [or] imprisonment not to exceed five years, or both" for knowingly or willfully making "a false statement or representation for the purpose of reducing, denying, or terminating

benefits to an injured employee"), 937 ("*fine* of not more than $1,000 [or] imprisonment for not more than one year, or both" for failing to require stevedore to present evidence of LHWCA coverage to vessel owner), 938(a) ("*fine* of not more than $10,000 [or] imprisonment for not more than one year, or both" for failing to secure compensation), 938(b) ("*fine* of not more than $10,000 [or] imprisonment for not more than one year, or both" for knowingly and with the intent to avoid paying compensation transferring the belongings of an injured employee), 941(f) ("*fine* of not less than $100 nor more than $3,000" for failure to comply with safety regulations), and 948(a) ("*penalty* of not less than $1,000 or more than $5,000" for discriminating against an employee because that employee claimed or attempted to claim compensation) (emphasis added). Also, two sections expressly provide for "fines" against other parties. *See* 33 U.S.C. §§ 928(e) ("*fine* of not more than $1,000" for receiving an unapproved fee for representing a claimant), 931(a)(1) ("*fine* not to exceed $10,000 [or] imprisonment not to exceed five years, or both" for employee who knowingly and willfully makes a false statement for the purpose of obtaining compensation) (emphasis added). Unlike these sections, § 914(e) does not use the word fine or penalty. Thus, within the framework of the LHWCA, it appears that Congress did not intend § 914(e) payments to be treated as fines or penalties.

Furthermore, 33 U.S.C. § 944(c)(3) provides that "[a]ll amounts collected as fines and penalties under this chapter [the LHWCA] shall be paid into" a special fund used to administer the LHWCA. *See also* H.R. Rep. 92–1441, at 15 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4714 ("Fines and penalties under the Act will continue to be paid into the special fund ... as under present law."). This provision indicates that Congress did not consider § 914(e) payments to be fines or penalties, because such payments are directed to be made to the individual claimants, not to the special fund for fines and penalties. Unlike the board, we place great weight on these other provisions of the LHWCA. If Congress had intended that payments under § 914(e) be treated as fines

or penalties, it would surely have done so by referring to them as such or would have directed these payments to the special fund.

Ingalls has directed our attention to what it considers the most authoritative judicial analysis of penalties, *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). In that opinion, the Supreme Court distinguished between penal provisions and non-penal provisions for purposes of the Full Faith and Credit Clause. *See* U.S. Const. art. IV, § 1. Foreshadowing the issue which is before us, the *Huntington* Court noted that "there is danger of being misled by the different shades of meaning allowed to the word 'penal' in our language." *Id.* at 666–67, 13 S.Ct. at 227; *see also id.* ("In the municipal law of England and America, the words 'penal' and 'penalty' have been used in various senses."). The Court then identified the indicia of a "penalty" as including (1) the absence of an association between the costs imposed and the actual harm done, *id.* at 676, 13 S.Ct. at 231 ("As the statute imposes a burdensome liability ... for their wrongful act, it must be considered penal.... But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is to him clearly remedial."), and (2) the extent to which the state benefits from the proceeds, *id.* at 681–82, 13 S.Ct. at 233 (A penal action "must be in the nature of a suit in favor of the state whose law had been infringed.") ("[P]enalties were recoverable at the instance of the state, or of an official duly authorized to prosecute on its behalf, or of a member of the public in the character of an informer."). Furthermore, the *Huntington* Court emphasized (3) that "[t]he test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." *Id.* at 668, 13 S.Ct. at 228; *see also id.* at 673–74, 13 S.Ct. at 230 ("The question whether a statute of one state ... is a penal law ... depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.").

■ Thus, consistent with *Huntington,* § 914(e) should not be considered to impose a penalty unless (1) the costs imposed are unrelated to the amount of actual harm suffered and are related more to the penalized party's conduct, (2) the proceeds from infractions are collected by the state, rather than paid to the individual harmed, and (3) the statute is meant to address a harm to the public, as opposed to remedying a harm to an individual. As is plain from the nature of the § 914(e) payments, they do not exhibit the characteristics of a penalty. The first *Huntington* criterion indicates that payments under § 914(e) are not penalties, as these payments are proportional to the injury suffered, not to the magnitude or egregiousness of the employer's misconduct. *See Director, Office of Workers' Comp. Programs v. Cooper Assocs., Inc.,* 607 F.2d 1385, 1389–90 (D.C.Cir. 1979) (holding employer's good faith conduct irrelevant to § 914(e) analysis). Furthermore, § 914(e) payments are not collected by the state, but are paid directly to successful claimants, again not supporting the idea that they are penal. Finally, while § 914(e) does help to ensure that the requirements of the LHWCA are followed, the ten percent additional payments are also meant to compensate claimants for their inconvenience and expense during the time when they did not receive timely compensation. They address a wrong to the individual rather than to the state.

Finally, we are not persuaded by the Navy's citation of various judicial opinions, including those in the above-noted Fifth Circuit cases involving Ingalls and an opinion of the Supreme Court, in which § 914(e) payments have been casually referred to as "penalties." *See, e.g., Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 534, 103 S.Ct. 1991, 1994, 76 L.Ed.2d 120 (1983); *Ingalls II,* 976 F.2d at 938; *Ingalls I,* 898 F.2d at 1095; *National Steel & Shipbuilding, Co. v. Bonner,* 600 F.2d 1288, 1294 (9th Cir.1979); *Newport News Shipbuilding & Dry Dock Co. v. Department of Labor,* 594 F.2d 986, 987 (4th Cir.1979). Although the board also cited certain of these opinions, they are not relevant to the issue before us because they do not deal with the meaning of the word "penalty." While they do discuss § 914(e) pay-

ments and use the word "penalty" in so doing, they do not decide whether such payments are properly characterized as "fines and penalties" for purposes of the FAR. These opinions merely use the word "penalty" as a convenient way of distinguishing the § 914(e) payments from the underlying awards. *See Watkins,* 8 B.R.B.S. at 560 ("Although the case law refers to the additional assessment as 'penalty,' this terminology has arisen primarily out of convenience."). Thus, the statements relied upon by the Navy and by the board are dicta and provide no guidance on the narrow issue we address here.

Accordingly, we conclude that the board erred in holding that the payments made pursuant to § 914(e) were "in the nature of a fine or penalty." The statutory framework indicates that Congress did not intend them to be considered as such; moreover, they do not exhibit the characteristics of fines and penalties. Thus, the board erred in holding that the payments made pursuant to § 914(e) were not chargeable to Ingalls' Navy contracts under FAR § 31.205–15 or its predecessor.

B. *Interest on Borrowings*

■ The Navy argues an alternative ground, presented to but not decided by the board, on the basis of which it urges us to affirm the board's decision. It argues that because the § 914(e) payments provide additional compensation to replace money that claimants were wrongly denied, they may be considered a form of interest. Accordingly, the Navy argues that the payments are "interest on borrowings (however represented)" within the meaning of § 31.205–20. In response, Ingalls argues that § 31.205–20 is inapplicable because the payments do not have the characteristics of "interest," and are not related to any borrowing of money to raise capital.

We agree with Ingalls and can resolve this "straight forward and simple" legal issue without remand. *See Riggin v. Office of Senate Fair Employment Practices,* 61 F.3d 1563, 1571 (Fed.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 773, 133 L.Ed.2d 726

(1996) (holding that this court may resolve questions of law within our jurisdiction that have been presented to, but not decided by, the board). As we recently stated in connection with the corresponding DAR provision: "By its terms, DAR § 15–205.17 applies to 'interest on borrowings.' A borrowing is generally defined as a loan." *Lockheed,* 113 F.3d at 1227. After noting that that provision lists a variety of methods for raising capital, we held that "it provides that interest paid to raise capital is unallowable." *Id.* In the present case, it cannot seriously be contended that Ingalls became liable for the § 914(e) payments while engaged in an effort to raise capital or otherwise borrow money. Moreover, it is too far-fetched to regard the payments as the cost of retaining funds that obviated the need to borrow. We find it implausible to characterize the fixed ten percent payments mandated by § 914(e) as any form of interest. This argument has so little merit that we are surprised to find it presented to us. Accordingly, we reject the Navy's argument that the § 914(e) payments are unallowable under § 31.205–20.

CONCLUSION

The board erred in construing 33 U.S.C. § 914(e) to be a penal provision within the meaning of FAR § 31.205–15 and DAR § 15–205.13. Rather, because a payment made pursuant to § 914(e) is not within the ambit of these provisions, they do not prevent Ingalls from recovering the § 914(e) payments through its Navy contracts. Similarly, because a § 914(e) payment is not "interest on borrowings" within the meaning of FAR § 31.205–20 and DAR § 15–205.17, these provisions do not prevent Ingalls from recovering its § 914(e) payments. Accordingly, the decision of the board is

*REVERSED.*