**McCLURE ELECTRICAL CONSTRUCTORS, INC., Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

**No. 97–1209.**

United States Court of Appeals, Federal Circuit.

Dec. 17, 1997.

James B. Richie, Law Offices of James B. Richie, PC, Atlanta, GA, for Appellant.

Steven J. Gillingham, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before NEWMAN, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

McClure Electrical Constructors, Inc. (McClure Electrical) challenges denial of its claim for contract reformation. McClure Electrical sought contract reformation to correct its unilateral bid mistake. On September 26, 1996, the Armed Services Board of Contract Appeals (Board) affirmed the contracting officer's final decision not to reform the contract. See McClure Elec. Constructors, Inc., ASBCA No. 49,711, 96–2 BCA ¶ 28,593 (1996). Because the Board did not err in so deciding, this court affirms the Board's decision.

## I.

McClure Electrical entered into a contract to build an electrical substation at a naval center in Louisville, Kentucky. Mr. McClure, the company's president, prepared three bid worksheets to determine the bid amount for this project. However, in preparing a recapitulation sheet, Mr. McClure did not transfer the amount from the third bid worksheet and instead twice transferred the amount from the first bid worksheet. Due to this error, McClure Electrical's bid was $16,530 lower than intended.

Due to this error, McClure Electrical's bid was the lowest of the eight entered bids by $28,000. When the contracting officer at the Department of the Navy reviewed the bids, she noticed the disparity between McClure Electrical's $145,000 bid and the Government estimate of $282,869. Suspecting a possible error and wishing to confirm the apparent low bid, the contracting officer sent a bid verification request to McClure Electrical. The letter did not state explicitly the contracting officer's suspicion of a possible error.

In the relevant portion of that letter, the contracting officer wrote: "[a]s evidenced by the enclosed Abstract of Offers, you are the apparent low bidder. Please review your bid worksheets for possible errors or omissions." The contracting officer enclosed abstracts showing the amount of each bid and the amount of the Government estimate for the project. These amounts were appreciably higher than McClure Electrical's bid.

With the contracting officer's bid verification request and the amounts of each bid in his possession, Mr. McClure reviewed his company's bid and confirmed its accuracy in a letter to the contracting officer. After completion of the project, Mr. McClure's son, vice-president of McClure Electrical, reviewed the project to determine why McClure Electrical had lost money on the contract and discovered the error. McClure Electrical then sought reformation of the contract to increase its price by $19,000—the mistakenly omitted materials costs of $16,530, plus sales tax, overhead, profit, and bond costs. McClure Electrical argued that the Navy's bid verification request was inadequate because the contracting officer did not expressly state her suspicion that McClure Electrical had submitted an erroneous bid. The contracting officer denied relief, and the Board affirmed. McClure Electrical now appeals to this court.

## II.

By statute, this court may not disturb the Board's factual determinations unless they are arbitrary, capricious, fraudulent, or so grossly erroneous as necessarily to imply bad faith. 41 U.S.C. § 609(b) (1994). The Board's interpretation of the controlling Federal Acquisition Regulations (FAR) is a question of law subject to independent review. See Ingalls Shipbuilding, Inc. v. O'Keefe, 986 F.2d 486, 488 (Fed.Cir.1993).

The FAR set forth a process for handling suspected mistakes in bids. 48 C.F.R. §§ 14.406–1, 14.406–3(g) (1992). To determine adequacy of a bid verification request, this court examines de novo the Board's interpretation of the controlling FAR. "Not-

withstanding this lack of deference on questions of law, [this court] accord[s] respect to the board's interpretation of regulations that are within its field of expertise: federal procurement law." *Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 975 (Fed.Cir.1997); *see also Erickson Air Crane Co. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984) ("[L]egal interpretations by tribunals having expertise are helpful to us, even if not compelling.").

### III.

■ In *Solar Foam Insulation*, ASBCA No. 46,921, 94–2 BCA ¶ 26,901 (1994), the Board set out its rules for allowing reformation of a contract due to a contractor's unilateral bid mistake. The contractor must show by clear and convincing evidence that:

(1) a mistake in fact occurred prior to contract award; (2) the mistake was a clear-cut, clerical or mathematical error or a misreading of the specifications and not a judgmental error; (3) prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification; (4) the Government did not request bid verification or its request for bid verification was inadequate; and (5) proof of the intended bid is established.

*Id.*

■ In this appeal, the parties do not dispute that the contractor has shown sufficient evidence to satisfy elements (1)—(3) and (5). Only element (4), the adequacy of the Government's request for bid verification, is at issue. In reviewing this appeal, this court examines the request for verification of a bid for adequacy.

The controlling regulations, 48 C.F.R. §§ 14.406–1 and 14.406–3(g) (1992), set forth a process for handling suspected bid mistakes:

After the opening of bids, contracting officers shall examine all bids for mistakes. In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request

from the bidder a verification of the bid, calling attention to the suspected mistake. 48 C.F.R. § 14.406–1 (1992). The regulations further provide that:

[s]uspected or alleged mistakes in bids shall be processed as follows.... (1) The contracting officer shall immediately request the bidder to verify the bid. Action taken to verify bids must be sufficient to reasonably assure the contracting officer that the bid as confirmed is without error, or to elicit the allegation of a mistake by the bidder. To assure that the bidder will be put on notice of a mistake suspected by the contracting officer, the bidder should be advised as appropriate—(i) That its bid is so much lower than the other bids or the Government's estimate as to indicate a possibility of error ... or (iv) Of any other information, proper for disclosure, that leads the contracting officer to believe that there is a mistake in [the] bid.

48 C.F.R. § 14.406–3(g)(1) (1992).

Although the contracting officer did not expressly state that she suspected an error, she did reveal the amounts of all bids. With this information in hand, McClure Electrical could see that the next lowest bid was almost 20% higher than its bid. In other words, the next lowest bid was equal to McClure Electrical's bid plus 20% of McClure Electrical's bid. The disparity between McClure Electrical's bid and the Government estimate was even greater. The Government estimate was $282,869, or almost twice McClure Electrical's bid.

In a similar case, *Klinger Constructors, Inc.*, ASBCA No. 41,006, 91–3 BCA ¶ 24,218 (1991), the contracting officer sent the low bidder a letter stating that its bid was "substantially lower than the Government estimate." *Id.* The bid verification request also disclosed the difference between the contractor's bid and the Government estimate. This discrepancy was the only information that could have formed a basis for the contracting officer's opinion that an error in the bid may have been made. In *Klinger*, the Board correctly determined that "the contracting officer's notification adequately alerted the contractor to the possibility of a mistake and the basis for the suspicion." *Id.*

712

McClure Electrical asserts that the record suggests that the Navy sends a bid verification request to low bidders as a matter of standard operating procedure. Thus, McClure Electrical argues, its receipt of such a letter did not give adequate notice of a suspected error because a "bid verification" letter comes to every low bidder regardless of the presence of a suspected error. To the contrary, the contracting officer in this case testified the Navy sends these letters only if the contracting officer has a concern that there may be a bid error.

In requesting bid verification, the contracting officer, although not expressly so stating, informed McClure Electrical that its bid was considerably lower both than any other bid and the Government's estimate by providing the Abstract of Offers. With that information (i.e., the bid abstracts) in hand, McClure Electrical should have been able to infer that a possible error occurred in its bid calculations and thus, was on notice of the possibility of such an error.

The contracting officer did not, of course, have access to McClure Electrical's bid worksheets, which contained the error. The contracting officer only suspected an error due to the discrepancy between McClure Electrical's bid and other bids. Thus, by disclosing the other bids and the Government's estimate, the contracting officer called attention to all information on which she had based her suspicion of a mistake. Under the circumstances, this disclosure was fully adequate. The contracting officer had no way of knowing McClure Electrical had made an error on its worksheets. Because the bid verification request sent out by the contracting officer was adequate to put McClure Electrical on notice of a suspected bid mistake, this court affirms the decision of the Board.

IV.

The Navy's contracting officer provided McClure Electrical with an adequate request for bid verification. McClure Electrical had in its possession all of the information known to the contracting officer, information from which it was just as able as the contracting officer to infer the possibility of a mistake. Therefore, the bid verification request placed McClure Electrical on notice of a suspected error. The Board properly affirmed the contracting officer's denial of contract reformation.

*COSTS*

Each party shall bear its own costs.

*AFFIRMED.*