**GENERAL ELECTRIC COMPANY,**
**Appellant,**

v.

**Lawrence J. DELANEY, Acting**
**Secretary of the Air Force,**
**Appellee.**

No. 00–1401.

United States Court of Appeals,
Federal Circuit.

DECIDED: June 1, 2001.

Robert E. Kirschman, Jr., Assistant Director.

Glen D. Nager, Jones, Day, Reavis & Pogue, of Washington, DC, argued for appellant. With him on the brief were Gregory G. Katsas and Jack W. Campbell, IV.

David A. Churchill, McKenna & Cuneo, L.L.P., of Washington, DC, for amici curiae Ernst & Young, LLP and PricewaterhouseCoopers, LLP. With him on the brief were Kevin Condrin Dwyer, of Washington DC, and Kathy C. Weinberg, of Dallas, TX.

Rand L. Allen, Wiley, Rein, & Fielding, of Washington, DC, for amici curiae AeroSpace Industries Association, et al. With him on the brief were Scott M. McCaleb and Derek A. Yeo.

Before MAYER, Chief Judge, PAULINE NEWMAN and RADER, Circuit Judges.

MAYER, Chief Judge.

General Electric Company (GE) appeals the decision of the Armed Services Board of Contract Appeals, ASBCA No. 44646 (February 10, 2000), denying its appeal of a contracting officer's final decision to disallow a portion of the depreciation charges GE proposed in connection with six delivery orders for spare parts. Because the board misinterpreted the Federal Acquisition Regulations (FAR), we reverse.

## Background

As part of the Peace Onyx Program between the United States and Turkey, GE entered into a joint venture with three Turkish entities to establish an affiliated company, Tusas Engine Industries, Inc. (Tusas), to locally manufacture F–16 aircraft engines to be sold by the United States to Turkey. In accordance with the joint venture agreement, GE contributed

James C. Caine, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were David M. Cohen, Director, and

approximately 25 million dollars in depreciable equipment to Tusas. Tusas recorded the cost of the equipment in both dollars and Turkish lira. It calculated the recorded cost using the exchange rate from dollars to lira at the time of the capital contribution.

In 1990 and 1991, the United States Air Force and GE entered into six firm fixed-price contracts for aircraft engine spare parts, which GE subcontracted to Tusas. The price of the contracts included charges for Tusas' allowable depreciation. Tusas depreciated the assets in lira, based on the assets' original lira value recorded on its books. It then converted the depreciation costs into dollars using the historic exchange rate from the time of the capital contribution.* GE used these dollar-based depreciation costs for calculating the Air Force's contract price.

The Air Force contracting officer disallowed the depreciation and recalculated it based on the current exchange rate for each accounting period in which Tusas claimed depreciation. Because of the highly inflationary Turkish economy, this recalculation resulted in GE recovering less than twenty percent of its historic dollar cost for the depreciable assets. GE appealed the contracting officer's decision to the Armed Services Board of Contract Appeals.

The board upheld the contracting officer's decision to use current exchange rates to convert Tusas' depreciation from lira to dollars. It held that the use of historic exchange rates would violate FAR §§ 31.205–11(a) and (e), resulting in a prohibited valuation of assets and recovery of depreciation in excess of book value.

*Discussion*

■ We will not disturb the factual findings of the board unless they are fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or unsupported by substantial evidence. 41 U.S.C. § 609(b) (1994); *McClure Elec. Constructors, Inc. v. Dalton*, 132 F.3d 709, 710 (Fed.Cir.1997). Although we accord respect to the board's interpretation of regulations that are within its field of expertise, federal procurement law, the board's conclusions of law, such as the meaning of a regulation or statute, are reviewed *de novo*. *Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 975 (Fed.Cir.1997).

FAR § 31.205–11(a) defines depreciation as "a charge to current operations which distributes the cost of a tangible capital asset, less estimated residual value, over the estimated useful life of the asset in a systematic and logical manner." In calculating allowable costs, such as depreciation, FAR requires consideration of (1) reasonableness, (2) allocability, (3) standards promulgated by the Cost Accounting Standards Board, if applicable, and otherwise generally accepted accounting principles, (4) terms of the contract, and (5) limitations set forth in Subpart 31.2 of the FAR. FAR § 31.201–2(a).

■ Neither FAR Subpart 31.2 nor the contract address the exchange rates to be used in converting a foreign affiliate's depreciation costs into dollars. Relevant cost accounting standards similarly fail to specifically address the use of exchange rates in this situation. *See* 48 C.F.R.

---

* The historic rate is the exchange rate in effect on the date the transaction took place, in this case the date of the capital contribution. In contrast, the current exchange rate is defined as the exchange rate in effect as of the end of each accounting period in which depreciation is claimed. *See* Bill D. Jarnagin, *Financial Accounting Standards: Explanation and Analysis* ¶ 1201 at 1111(CCH) (18th ed.1996).

§§ 9904.404, 9904.409. FAR § 31.201–2(a)(3) directs that where the FAR and cost accounting standards are silent, generally accepted accounting principles should be used to determine allowability of costs. Likewise, cost accounting standards provide that the method of depreciation used for financial accounting purposes shall be used for contract costing. *Id.* § 9904.409–50(f)(1).

Standard financial accounting practice recognizes a hierarchy of generally accepted accounting principles. The highest authorities in the system of accounting norms are the statements published by the Financial Accounting Standards Board (FASB). *See* James R. Adler, *Using Accounting Principles in Litigation,* Prac. Law., Apr. 1988, at 43, 45. FASB Statement of Financial Accounting Standards (FAS) 52, "Foreign Currency Translation," governs a company's conversion of the depreciation costs of a foreign affiliate whose local economy is highly inflationary into dollars.

Under FAS 52, calculation of foreign-currency depreciation costs of an affiliate is a two-step process. First, the functional currency of the affiliate must be determined. The parent company's reporting currency must be selected as the foreign affiliate's functional currency if the affiliate operates in a highly inflationary economy. FAS 52 ¶ 11. A "highly inflationary" economy experiences cumulative inflation of approximately 100 percent or more over a three-year period. *See id.* During the periods at issue, the Turkish economy met this requirement. Because GE's reporting currency is the dollar, Tusas' functional currency is likewise the dollar.

The second step is the remeasurement of costs recorded in the local currency (lira) into the functional currency (dollars). FAS 52, ¶ 10. The remeasurement process is intended to produce the same result

as if the affiliate's books had been maintained in the functional currency. *Id.* To achieve this, FAS 52 directs that historic exchange rates be used. *See* Jarnagin, *supra* ¶ 1201 at 1111, 1113 (Chart 1).

The use of historic exchange rates also produces an equitable result. FAR § 31.201–1(a) specifically provides that in ascertaining what constitutes a cost, any generally accepted method of determining costs that is equitable and is consistently applied may be used. FAR § 31.102 further requires that the negotiation of prices in fixed-price contracts must be "fair and reasonable." The government and the board recognized that failure to use historic exchange rates would be inequitable for foreign contractors in highly inflationary economies. Under the board's reading of the regulations, GE argues that it would recover less than 20 percent of the historic dollar cost of the assets. Because the historic acquisition cost measures the economic sacrifice, or cost, of depreciable assets, the use of historic exchange rates is necessary to produce not only meaningful, but in this case equitable, depreciation costs.

Notwithstanding the FAR's direction to apply generally accepted accounting principles, and therefore FAS 52, the board disallowed it as violative of FAR § 31.205–11(a)'s prohibition on "valuation" of assets. Valuation in accounting is the assigning of dollar (or other currency denominations) amounts to assets. Glenn L. Johnson & James A. Gentry, Jr., *Finney & Miller's Principles of Accounting* 284 (8th ed.1980). Acquisition cost is the proper valuation of assets and, once established, the basis of the asset may not be adjusted to reflect current market prices.

The government argues that the use of historic exchange rates effectively revalues the depreciated assets. If Tusas were to convert its depreciation costs into dollars

using historic exchange rates and, after submitting its costs to GE, convert depreciation cost back into lira at the current exchange rate, Tusas would effectively receive an amount of depreciation that would occur only if the assets had been initially revalued at a higher amount.

As stated above, however, the purpose of depreciation is to allocate the entire historic cost of an asset. The cost to GE was in dollars, not lira, and the costs assessed to the Air Force must be converted into dollars in the context of dollar-based contracts. The selection of an exchange rate to convert lira into dollars is a process of measuring costs, not revaluing assets. If the local economy is highly inflationary, the total dollar depreciation cost calculated using historic exchange rates will exceed the costs calculated using current exchange rates, but it will equal the historic acquisition cost of the depreciable assets. The use of historic exchange rates is independent of the current market value of the depreciable assets and does not change the value of the assets. Rather it preserves the original dollar cost of the assets for purposes of depreciation in dollars. Tusas has not changed the value of the assets in its general ledger and it calculates the amount of depreciation in lira based on the historic cost recorded in its Turkish financial books.

The board also disallowed the use of historic exchange rates because they produce depreciation in excess of book value.

FAR § 31 .205–11(e) prohibits depreciation in excess of the book value of an asset. The government argues that when Tusas converts its depreciation cost from lira into dollars at the historic exchange rate and later converts dollars paid by GE to Tusas into lira at the current exchange rate, the two transactions create a depreciation expense in excess of the recorded book value of the assets.

This is a mischaracterization of the transaction between GE and Tusas. The use of historic exchange rates only produces total depreciation costs equal to the original acquisition cost of the assets in dollars. This is the purpose of depreciation under the FAR. Any conversion back into lira by the affiliate is not relevant to the specific accounting question of calculating depreciation. The depreciation claimed was simply a translation from the book amount in lira into dollars and the depreciation expense is, therefore, not in excess of the recorded book value.

### Conclusion

Accordingly, we reverse the decision of the board.

*REVERSED.*